## COMMONWEALTH *vs.* TERRENCE E. JOHNSTON.

No. 02-P-650.

Worcester. May 9, 2003. - November 14, 2003.

Present: DUFFLY, CYPHER, & COHEN, JJ.

*Rape. Assault and Battery. Rules of Criminal Procedure. Practice, Criminal,*
Motion to suppress, Duplicative convictions.

At a criminal trial, the judge did not err in denying the defendant's pretrial
motion to suppress statements on the grounds that were presented to him
(i.e., that the defendant had not been advised of his Miranda rights prior to
being questioned by police), and nothing in the reasoning of *Com-
monwealth* v. *Ayala*, 29 Mass. App. Ct. 592 (1990), obliged this court on
appeal to address a new argument in support of the motion that was not
argued before the trial judge (i.e., that the Miranda form that the defendant
signed did not adequately convey that he had the right to the presence of
an attorney during questioning). [15-22]
A criminal defendant's convictions of rape and assault and battery were not
duplicative, where the two acts were not so closely related as to constitute
a single course of conduct. [22-23]

INDICTMENTS found and returned in the Superior Court Depart-
ment on July 14, 2000.

A pretrial motion to suppress evidence was heard by *John S.
McCann*, J., and the cases were tried before *James P. Donohue*,
J.

*Eric S. Brandt*, Committee for Public Counsel Services, for
the defendant.

*Michelle R. King*, Assistant District Attorney, for the
Commonwealth.

CYPHER, J. A jury convicted the defendant, Terrence E.
Johnston, of rape (G. L. c. 265, § 22[*b*], as in effect prior to St.
2002, c. 35, § 1), and assault and battery (G. L. c. 265, § 13A).
The defendant claims that the judge erred in denying his motion
to suppress statements. The defendant also requests that we

vacate his conviction of assault and battery as duplicative of the rape conviction.

1. *Factual background.* A jury could have found the following facts. During the evening of June 12, 1999, the defendant's wife, Margaret,[1] was napping. She was awakened by the defendant placing his hand on her leg. Margaret asked the defendant what he was doing. He replied that either she would cooperate with him or he would do it forcefully.

According to Margaret, the defendant wrapped his legs around hers, despite her telling him that she had no intention of having sex with him. The defendant said, "You either do it willingly or forcefully," and "I'm going to get something out of this marriage." Margaret tried to resist, but the defendant became more forceful. He tightened his grip on her legs and pulled her hair. The defendant pulled down Margaret's underpants and penetrated her from behind, despite her repeated pleas of "No, no, no." The defendant ejaculated, let go of her, dressed, and went into the kitchen. Margaret felt "shock[ed]" and "stunn[ed]."

Margaret's daughter, Joyce,[2] arrived home at approximately 10:00 or 10:30 P.M. Upon her arrival, she heard the defendant yelling from inside the bedroom. Through the door, Joyce asked to speak with Margaret privately. Margaret came out of the bedroom, and Joyce observed that she appeared to be shocked and "had a dazed look on her face, as if something traumatic had [happened] to her." When Joyce asked her what was wrong, Margaret said that the defendant had raped her. The defendant pushed Margaret back into the bedroom and closed the door. Joyce left the house and called the police from her cell phone. Back inside the bedroom, the defendant told Margaret, "I know what I did was wrong, but I'm not going to put up with your crap anymore. It's going to be my way or I'm throwing you out."

The police arrived and spoke with Margaret on Joyce's cell phone. They asked that she and the defendant come outside and speak with them. Officer Bryan Bates observed that Margaret

---

[1]A pseudonym.

[2]Also a pseudonym.

appeared very pale and that she was sobbing. Margaret told Officer Bates that her husband had raped her.

Officer Bates placed the defendant under arrest, read him his Miranda warnings, and placed him in the cruiser. Officer Bates detected a strong odor of alcohol on the defendant's breath and noticed that his speech was slurred.

Margaret was taken to the hospital for medical evaluation. Medical personnel observed that she was "anxious" and that there was abnormal bruising along her lower extremities. Following the evaluation, Officer Bates met with Margaret again. He observed that, five hours after the alleged incident, she was still very upset and emotional.

On June 14, Monday morning, Officer Bates interviewed the defendant after the defendant signed the department's Miranda waiver form. At trial, Officer Bates read the defendant's handwritten statement to the jury:

> "I, [Terrence E. Johnston,] to the best of my knowledge and recollection, did not rape my wife. I do remember being a bit rough and her saying that it hurt. I did hold her by the hair from behind and let go and held her by the shoulders when she said to. I do strongly feel that she is getting even with me for threatening to kick her out because of her broken promises and lies."

Officer Bates also testified that the defendant had told him that he had been rough when having sex with Margaret and that she had said that it hurt, but denied that he forced her to have sexual relations. The defendant admitted to Officer Bates that Margaret had said "no" or "stop," but stated that she could not refuse to have sex with him under religious laws.

2. *The Miranda warnings.* The defendant argues that the Miranda waiver on the form he signed at the police station was constitutionally defective because the warning did not convey to the defendant that he had the right to the presence of an attorney during questioning. As summarized in *Miranda* v. *Arizona*, 384 U.S. 436, 479 (1966), before being questioned a suspect must be warned:

> "[1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that

he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

The relevant part of the form signed by the defendant read as follows:

"Miranda warnings

"You have the right to remain silent — do you understand this right?

"Anything you say can be used against you at trial — do you understand this right?

"You have the right to an attorney — do you understand this right?

"If you cannot afford an attorney, one will be appointed to you by the Commonwealth at no expense and prior to any questioning — do you understand this right?"

The form then conveyed the right to a prompt presentment and concluded with two "waiver" provisions, one regarding Miranda rights and one regarding presentment rights. The part regarding the waiver of Miranda rights read as follows:

"Having these rights in mind, do you now waive your Fifth Amendment Rights pursuant to Miranda and desire to talk to me now concerning this or other matters of concern to us?"

The defendant indicated that he wished to speak with the police and he signed the waiver.

The Miranda warning on the form could have more clearly conveyed that the defendant had the right to an attorney's presence during questioning.[3] We do not decide whether the form

---

[3]The defendant had been advised that he had a right to an attorney and had been advised that if he could not afford one, one would be appointed prior to questioning. Considering that the entire Miranda waiver concerned whether the defendant wished to speak with the police, advising him that "he had the right to an attorney" could reasonably be interpreted to mean that the defendant had the right to counsel during questioning. That, however, is not the only possible interpretation of the form.

was constitutionally defective, however, because that issue is not properly before us.

The defendant argues that the issue was adequately preserved either (1) because his claim in his motion to suppress that he had not been advised of his Miranda rights prior to being questioned[4] comprehends a claim that he was not adequately advised of those rights, and the judge's ruling that "the defendant was appropriately advised of his Miranda rights" means that the judge expressly considered and decided that claim; or (2) because we did not require such specificity in *Commonwealth* v. *Ayala*, 29 Mass. App. Ct. 592, 598 n.8 (1990), a case with a similar defect in the Miranda warnings but which was decided under Mass.R.Crim.P. 22, 378 Mass. 892 (1979), governing objections, rather than under Mass.R.Crim.P. 13, 378 Mass. 871 (1979), governing motions to suppress.

Rule 13(a)(2) of the Massachusetts Rules of Criminal Procedure requires that a defendant state the grounds on which the motion is based "with particularity."[5] The rule provides that "[g]rounds not stated which reasonably could have been known at the time a motion is filed shall be deemed to have been waived." The purpose of the requirement that all grounds be alleged with particularity is (1) to "indicate[] to the judge whether the party can meet [the] 'initial burden of establishing the facts necessary to support his motion' "; and (2) to "provide[] reli-

---

[4]The defendant claimed in the text of his motion that he had not been advised of his Miranda rights prior to questioning; however, the defendant's affidavit in support of the motion focuses on his state of intoxication and makes a general claim that he did not make a knowing, intelligent, and voluntary waiver. The defendant's memorandum of law does not develop the point, focusing also on the effect of the defendant's intoxication on the validity of the waiver.

[5]Rule 13(a)(2) of the Massachusetts Rules of Criminal Procedure provides as follows: "Grounds and Affidavit. A pretrial motion shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity. If there are multiple charges, a motion filed pursuant to this rule shall specify the particular charge to which it applies. Grounds not stated which reasonably could have been known at the time a motion is filed shall be deemed to have been waived, but a judge for cause shown may grant relief from such waiver. In addition, an affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion shall be attached."

able notice to the opposing party of the facts supporting the motion."[6] *Commonwealth* v. *Parker*, 412 Mass. 353, 356-357 n.9 (1992), quoting from *Commonwealth* v. *Santosuosso*, 23 Mass. App. Ct. 310, 313 (1986).

There has been no lack of clarity in the numerous decisions interpreting the particularity requirement of rule 13(a)(2). See, e.g., *Commonwealth* v. *Carey*, 407 Mass. 528, 537 n.5 (1990) (juvenile waived his right to raise additional grounds for excluding incriminating statements on appeal because he did not raise them in his motion to suppress); *Commonwealth* v. *Pope*, 15 Mass. App. Ct. 505, 506-507 (1983) (trial judge could properly decline to hear issues not properly raised in defendant's motion to suppress); *Commonwealth* v. *Alan A.*, 47 Mass. App. Ct. 271, 275 (1999) (defendant waived his right to raise issue that his statement was given involuntarily because he did not raise it in his motion); *Commonwealth* v. *Robie*, 51 Mass. App. Ct. 494, 499 (2001) (defendant waived his right to raise for the first time on appeal whether police had properly ordered him to exit a vehicle, where he argued below that search was improper because he had not consented to it).

In *Commonwealth* v. *Lodge*, 431 Mass. 461, 473-474 & n.12

---

[6]The Commonwealth argues that, had it been made aware of the claim regarding the defective Miranda warning on the form, it would have defended the motion differently. For example, the defendant received two Miranda warnings before he received the warnings on the form. Officer Bates testified at the suppression hearing regarding the content of the first set of warnings. Those warnings were not defective. Officer Bates also testified at the motion to suppress that the defendant received additional warnings during the booking procedure. The Commonwealth argues that, had it known of the defendant's claim at the hearing on the motion to suppress, it would have introduced the form with more precisely phrased warnings as evidence. The defendant makes no claim on appeal that the prior warnings were defective, but points out that he was so intoxicated at the time of his arrest that he could not have appreciated the warnings and that, in any event, almost thirty hours had passed between the proper warnings and the warnings about which he complains here. In his written findings of fact, the judge found that "Officer Bates advised the defendant to be quiet as the charges were very serious and the officer was concerned about the defendant's state of intoxication." Had the claim been alleged at the motion to suppress hearing, the judge could have made findings regarding whether the defendant's intoxication interfered with his understanding of his rights. See, e.g., *Commonwealth* v. *Look*, 379 Mass. 893, 906, cert. denied, 449 U.S. 827 (1980); *Commonwealth* v. *Silanskas*, 433 Mass. 678, 685-688 (2001).

(2000), the Supreme Judicial Court rejected an argument similar to the defendant's argument. In *Lodge*, the defendant had stated in his motion to suppress that police had "unlawfully exceeded the bounds of permissible inquiry." *Id.* at 474 n.12. The court concluded that, although the defendant arguably could have been alleging that the police had exceeded the scope of the warrant, the defendant had not gone into detail about that issue in his memorandum of law, and on appeal, the defendant presented the court with a new theory that had not been before the trial judge. *Ibid.*

The defendant argues that *Commonwealth* v. *Ayala*, 29 Mass. App. Ct. at 598 & n.8, compels us to conclude that the issue has been properly preserved, as it is "functionally equivalent" to the facts of this case. *Ayala* concerned the admissibility, over defense counsel's objection at voir dire, of a defendant's statements during a trial in which no motion to suppress had been filed. *Id.* at 593. As such, we were concerned with Mass.R. Crim.P. 22, which governs objections, rather than rule 13.

In *Ayala*, we concluded that the defendant's appellate claim that the Miranda warnings he had received were inadequate was sufficiently preserved because defense counsel had argued at voir dire during trial that there was no evidence of waiver and that "under all the circumstances, the Commonwealth has not shown voluntariness beyond a reasonable doubt." *Id.* at 594. Despite defense counsel's failure to bring this claim to the judge's attention when trial resumed before the jury, we decided that Mass.R.Crim.P. 22 required only that defense counsel make known the action counsel desired the judge to take and that there was no need for her to renew her objection. *Id.* at 598 n.8. We also concluded that the attorney's "protest on the ground of voluntariness was broad enough to cover the failure to give all the required Miranda warnings." *Ibid.*

The defendant urges us to apply *Ayala* to his case, notwithstanding that his claim was brought through a motion to suppress rather than as a rule 22 objection. The defendant argues that there is essentially no reason to treat rule 13 and rule 22 differently for purposes of determining whether an issue has been waived, as the point of the preservation requirement is the same: to alert the judge to the nature of the perceived problem.

We decline to relieve the defendant of the requirements of rule 13. First, as we set forth above, rule 13 and the case law interpreting that rule are quite clear. Second, case law since *Ayala* has reaffirmed the requirement that an objection must be sufficient to alert the judge to the grounds for the objection. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 636 & nn. 1, 2 (1997) (defendant's objection to use of affidavit based on best evidence rule did not preserve alleged constitutional error); *Commonwealth* v. *Lyons*, 426 Mass. 466, 473 n.12 (1998) (defendant's asserted error objected to on different ground than raised on appeal; proper standard of review is substantial likelihood of miscarriage of justice); *Commonwealth* v. *Fowler*, 431 Mass. 30, 41 n.19 (2000) (defendant objected to testimony and to closing argument but not for reasons asserted on appeal). See also *Commonwealth* v. *Woods*, 419 Mass. 366, 370-372 (1995) (admissibility of statement should have been challenged with a pretrial motion to suppress; record failed to show that objection encompassed argument asserted on appeal); *Commonwealth* v. *Perryman*, 55 Mass. App. Ct. 187, 192-193 (2002).

There is a significant difference between a claim that Miranda warnings were not provided prior to questioning and a claim that a warning was given but was defective in some way. In the first instance, the attention of the judge and of opposing counsel is directed to whether warnings were given at all. In the second instance, attention is directed to the quality and accuracy of the warnings that were given and, perhaps, to the defendant's understanding of the warnings.

As the issue has been framed, we detect no error: the motion judge did not err in denying the defendant's motion to suppress on the grounds that were presented to him. See *Commonwealth* v. *Amirault*, 424 Mass. 618, 641 n.15 (1997) ("a right that must be claimed is not denied if it is not claimed, and the proceeding in which the claim is not made is, in that respect, wholly free from error"). We are not obliged on appeal to address new arguments in support of rule 13 motions to suppress that were not argued before the trial judge. See, e.g., *Commonwealth* v. *Barnes*, 399 Mass. 385, 393-394 (1987) (appellate court not obliged to consider grounds argued on appeal but not raised in motion to suppress); *Commonwealth* v. *Ramos*, 402 Mass. 209,

211 (1988) (same); *Commonwealth* v. *Carey*, 407 Mass. 528, 537 n.5 (1990) (same). See also Smith, Criminal Practice and Procedure § 1277 (2d ed. 1983 & Supp. 2003) ("appellate court is not obliged to address an issue if it was not raised during suppression hearing or at a trial, especially if it requires resolution of a factual question").[7]

This is not to say that the substantive issue presented by the defendant is insignificant. Trial counsel's failure to raise the issue may have constituted ineffective assistance of counsel. We are not, however, prepared to assess the merits of any such claim on this record.[8] See *Commonwealth* v. *Pena*, 31 Mass. App. Ct. 201, 207 (1991); *Commonwealth* v. *McCormick*, 48

---

[7]We recognize that in some instances, grounds not raised below in motions to suppress have been considered on appeal under a substantial risk of a miscarriage of justice standard or, in some instances, as if they were properly preserved. See, e.g., *Commonwealth* v. *Scala*, 380 Mass. 500, 509-510 (1980); *Commonwealth* v. *Rivera*, 429 Mass. 620, 623 (1999); *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 550, cert. denied, 537 U.S. 942 (2002). See also *Commonwealth* v. *Vardinski*, 438 Mass. 444, 449 n.9 (2003). Such cases have sometimes relied for authority on cases involving first degree murder appeals, which receive review under G. L. c. 278, § 33E, under the standard of whether there is a substantial likelihood of a miscarriage of justice. See, e.g., *Commonwealth* v. *Connolly*, 356 Mass. 617, 619, 624-625, cert. denied, 400 U.S. 843 (1970); *Commonwealth* v. *Clark*, 378 Mass. 392, 397 (1979). But see *Commonwealth* v. *Brown*, 392 Mass. 632, 636 n.2 (1984) (court refused in first degree murder case to consider merits of issue not raised in motion under rule 13); *Commonwealth* v. *Shine*, 398 Mass. 641, 649 n.2 (1986).

[8]We cannot say that counsel's failure to raise the issue was not a tactical choice. For example, it is possible that counsel was aware that the defendant *in fact* understood this right. See *Commonwealth* v. *Squailia*, 429 Mass. 101, 110-111 & n.7 (1999); *Commonwealth* v. *Brown*, 57 Mass. App Ct. 326, 332 (2003) (failure to move to suppress statements was tactical choice). Trial counsel's tactics and strategy are appropriately fleshed out in a motion for new trial alleging ineffective assistance of counsel. As these motions may be brought at any time, the defendant is not without an avenue of relief.

Moreover, although the defendant's claim is a serious one, imperfect Miranda warnings do not result in automatic reversal. *Commonwealth* v. *Coplin*, 34 Mass. App. Ct. 478, 483 (1993). Furthermore, Miranda advisements need not be given in the exact form described in *Miranda* v. *Arizona*, 384 U.S. at 479, it is enough that the advisement reasonably convey to the suspect his rights as required by Miranda. *Duckworth* v. *Eagan*, 492 U.S. 195, 202-203 (1989). "[N]o talismanic incantation [is] required to satisfy its strictures." *California* v. *Prysock*, 453 U.S. 355, 359 (1981). Whether the defendant received the functional equivalent of all of the required warnings is, in these circumstances, a question of fact best resolved in a trial court rather than an appellate court.

Mass. App. Ct. 106, 107-108 (1999) (claims of ineffective assistance of counsel should be advanced in a motion for new trial).

3. *Duplicative charges.* The defendant argues that because assault and battery is a lesser included offense of rape, and the acts of which he was convicted are based on the same conduct, his conviction of assault and battery must be reversed. Assault and battery is a lesser included offense of rape. *Commonwealth v. Walker,* 426 Mass. 301, 303 (1997). A defendant's convictions of both offenses may stand where the acts to support the conviction of rape are separate and distinct from the acts used to support the conviction of assault and battery. See *Commonwealth v. Mamay,* 407 Mass. 412, 418 (1990). See also *Commonwealth v. Page,* 42 Mass. App. Ct. 943, 944 (1997).

The defendant relies on dicta in *Commonwealth v. Ortiz,* 47 Mass. App. Ct. 777, 780 (1999), to support his argument that the additional violence Margaret suffered was so integrated into the sexual offense that it did not constitute a separate offense. *Ortiz* did not involve a risk of duplicative convictions, but rather a concern that a jury had convicted the defendant for uncharged conduct. In *Ortiz,* we stated that the punching and gagging of the complainant and the dragging her by the hair, in the course of an oral rape, were integrated in the sexual episode and were not separate offenses, and therefore, the defendant's conviction of the lesser included offense of assault and battery was not based on uncharged conduct. *Ibid.* Here, there is no risk that the defendant was convicted of uncharged conduct.

We also think that there is no risk that the defendant was convicted of a greater offense and lesser offense based on the same conduct. We conclude that the defendant's actions in committing the assault and battery, in particular by pulling her hair,[9] were factually distinct from his actions in raping her. More specifically, when the defendant pulled her hair, he committed an assault and battery. When he penetrated her against her will, he committed rape. See *Commonwealth v. Morin,* 52 Mass. App. Ct. 780, 787 (2001) (when defendant grabbed complain-

---

[9]We assume without deciding that the act of wrapping his legs around her legs and bruising her could be considered a part of the rape or in preparation of the rape. See *Commonwealth v. Sanchez,* 405 Mass. 369, 371 (1989).

ant's arm and wrist to restrain her, he assaulted and battered her; when he touched her breasts, he committed an indecent assault and battery). The two acts were not so closely related as to constitute a single course of conduct. The convictions were not duplicative.

*Judgments affirmed.*